NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0359n.06

No. 26-3013

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| AARON DAVIS, | ) | FILED |
| Plaintiff-Appellant, | ) | Aug 13, 2026 |
|  | ) | KELLY L. STEPHENS, Clerk |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| TYLER W.A. DUNCAN, | ) | STATES DISTRICT COURT FOR |
| Defendant, | ) | THE NORTHERN DISTRICT OF |
|  | ) | OHIO |
| DALE R. OSBORN, et al., | ) | OPINION |
| Defendants-Appellees. | ) |  |
|  | ) |  |

Before: STRANCH, BUSH, and MURPHY, Circuit Judges.

STRANCH, J., delivered the opinion of the court in which MURPHY, J., concurred. BUSH, J. (pp. 16–19), delivered a separate dissenting opinion.

**JANE B. STRANCH, Circuit Judge.** This case arises from an assault by Tyler Duncan, a corrections officer, against inmate Aaron Davis. Davis brought § 1983 claims against: Duncan for Fourth Amendment violations; the director of the correctional facility, Dale Osborn, for supervisory liability and failure to protect; and several institutional defendants for negligent hiring, failure to train, and a custom of acquiescing to constitutional violations. All defendants except Duncan moved for summary judgment on all claims against them, which the district court granted. Davis now appeals the grant of summary judgment. Because the district court did not err in its decision, we **AFFIRM**.

# I.   BACKGROUND

This case arises from an assault by corrections officer Tyler Duncan, while employed at the Multi-County Correctional Center ("MCCC").  It is undisputed that Duncan entered inmate Aaron Davis's cell and assaulted him.  Davis brought four claims under 42 U.S.C. § 1983, alleging that Duncan and several other defendants violated his constitutional rights.  Relevant to these claims is Duncan's employment history.

Duncan first worked at the North Central Ohio Rehabilitation Center, a juvenile facility in Marion, Ohio.  While working at this facility, he was written up once for the use of force.  He testified that a 16-year-old juvenile had cornered himself and was throwing chairs at Duncan.  After attempting to talk him down for 10 to 20 minutes, Duncan "stepped in and grabbed him and wrapped him up, and [they] went to the floor," from which the juvenile suffered a rug burn.  R. 51, Duncan Depo., PageID 879.  Duncan was written up for the incident, but he was not otherwise disciplined and was not terminated because of it.

Duncan then worked for an adult facility, Marion Correctional Institution.  At the beginning of his employment, he attended a month-long academy that included training on de-escalation techniques, response to resistance, self-defense, and the use of pepper spray.  Completion of this training certified him as a corrections officer.  Duncan was terminated because he was suspected of bringing drugs into the facility, but he testified that he was later cleared because it was a nurse he was dating that smuggled drugs into the facility.

In November 2019, the MCCC hired Duncan as a corrections officer.  At the time, Defendant-Appellee Dale Osborn was the Executive Director of MCCC.  As a new officer, Duncan was required to attend a 40-hour training session, which included a self-taught Response to Resistance/Aggression Correspondence Course and open-book examination.  Duncan testified that

the course included material he knew from his prior training and that it was sufficient as a refresher course. Duncan also testified that he thought all new officers were undertrained and that he could have used more training. Osborn testified that he consulted with a captain at the facility to ensure new hires were properly trained; did not recall discussing Duncan's training or work history; but thought that if anyone had expressed concerns about it, he would recall.

While at MCCC, Duncan was disciplined for two incidents prior to the assault on Davis. In the first incident, Duncan attempted to open a cell door and "go in on an inmate that was high on meth and yelling at Duncan." Duncan's supervisor, Sergeant Andrew Jones, took the keys out of the lock, pulled Duncan's hands away, and shut the cell door. Jones documented this with an incident report. Duncan testified that he wanted to go in the cell to prevent the inmate from harming himself because the inmate was slamming his head against the wall and had blood running down his face. In the second incident, Jones wrote-up Duncan for threatening to punch an inmate and reported the incident to his lieutenant.

Davis was incarcerated at MCCC based on a suspected parole violation. On April 17, 2020, Duncan was escorting Davis back to his cell when they got into a verbal argument. It is undisputed that the argument turned physical, as Duncan entered Davis's cell and Davis "ultimately went to the ground and hit his head on the wall." R. 62, Summ. J. Op., PageID 1424. Duncan was later charged and convicted of assault based on this incident.

Davis sued Duncan, Osborn, Marion County, Hardin County, and Marion-Hardin Correction Commission ("MHCC").[1] He brought four claims under 42 U.S.C. § 1983, including: excessive use of force and unreasonable seizure based on the Fourth Amendment (Count I); failure

---

[1] Davis also sued another corrections officer, Brandon Taylor, but ultimately withdrew his claims against Taylor during summary judgment proceedings. The district court dismissed Taylor from the action, and Davis does not challenge this dismissal on appeal.

to protect under the Eighth Amendment (Count II); a claim for supervisory liability against Osborn (Count III); and a *Monell* claim against the Counties and MHCC (collectively, the "Institutional Defendants.") (Count IV). All Defendants excluding Duncan (hereinafter, "Defendants") moved for summary judgment as to all claims against them, which the district court granted. The court then entered judgment in favor of all Defendants except Duncan, dismissed them from the case, and finding no just reason for delay, certified their dismissal under Federal Rule of Civil Procedure 54(b).

Davis timely appealed.

## II.   JURISDICTION

Under Federal Rule of Civil Procedure 54(b), a district court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." To properly certify a dismissal under Rule 54(b), a district court must (1) "expressly direct the entry of final judgment as to one or more but fewer than all the claims or parties in a case," and (2) "expressly determine that there is no just reason to delay appellate review." *Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 500 (6th Cir. 2012) (quoting *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994)). We review the first component de novo and the second for abuse of discretion. *Gavitt v. Born*, 835 F.3d 623, 638 (6th Cir. 2016). Here, the district court directed the entry of final judgment as to all Defendants except Duncan and expressly determined that there was no just reason to delay appellate review.

Although no party challenges the district court's decision to certify an appeal under Rule 54(b), the dissent asserts that the court erred by finding no just reason for delay. Yet the district court's certification order "merits substantial deference." *Solomon v. Aetna Life Ins. Co.*, 782 F.2d

58, 61 (6th Cir. 1986). We have told courts to consider a "nonexhaustive list of factors" when deciding whether there is no just reason for delay. *Gen. Acquisition*, 23 F.3d at 1030 (citation omitted). Among these factors are "the relationship between the adjudicated and unadjudicated claims," "the possibility that the need for review might or might not be mooted by future developments in the district court," and the equities and efficiencies of the case. *Id.* (citation omitted). We see no abuse of discretion in the way the district court analyzed these factors.

The dissent, by contrast, would adopt a bright-line rule: no just reason for delay could ever exist if "the outcome on the issues pending in the district court could moot the issues on appeal." Diss. at 16. But this rule misreads our caselaw, which turns on a totality of the circumstances test that treats this mootness concern as merely one factor. *See Gen. Acquisition*, 23 F.3d at 1030. Besides, the district court did not abuse its discretion in the way that it considered this mootness factor. The dissent asserts that the district court improperly certified the appeal because "Duncan would be unlikely to contest (much less win on) liability for the underlying constitutional violation," which is necessary to establish a *Monell* claim against the Institutional Defendants. Diss. at 16. While the dissent may be correct that the constitutional violation issue could hypothetically allow us to avoid deciding the issues in Davis's appeal of the court's dismissal of the *Monell* claims, the district court did not abuse its discretion in finding this eventuality unlikely. The court explained that Duncan's liability for a constitutional violation will not affect the *Monell* claims on appeal because those claims involve "questions of institutional policy and custom" while Duncan's liability turns on his personal actions (for which he has been criminally convicted). Not only that, Davis indicated that he would appeal the *Monell* claims no matter what happened in the district court on the constitutional claim against Duncan. All told, the court properly exercised its discretion in determining that there was no just reason for delay. *See* 10 *Moore's Federal Practice*

§ 54.22; *see also* 10 Charles A Wright, et al., *Federal Practice and Procedure Civil* § 2656, at 45 (4th ed. 2014).

Accordingly, we have jurisdiction over this appeal.

### III. LEGAL ANALYSIS

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Alford v. Deffendoll*, 165 F.4th 490, 495 (6th Cir. 2026). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Petsche v. Hruby*, 172 F.4th 475, 480 (6th Cir. 2026) (quoting *Kirilenko-Ison v. Bd. of Educ. Of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020)). We view "the evidence in the light most favorable to the party opposing the motion," which "includes drawing all justifiable inferences in [their] favor." *Id.* (quoting *Kirilenko-Ison*, 974 F.3d at 660).

As a preliminary matter, Davis argues that the district court erred by resolving factual disputes in favor of Defendants, in violation of *Tolan v. Cotton*, 572 U.S. 650 (2014) (per curiam). The *Tolan* Court vacated a decision from the Fifth Circuit because it "failed to view the evidence at summary judgment in the light most favorable to [the non-moving party] with respect to the central facts." 572 U.S. at 657. Davis contends that the district court violated *Tolan* in two ways: by disregarding the import of the Jones cell-entry incident and ignoring evidence of MCCC's culture.

Regarding the Jones cell-entry incident, Davis contends that the district court erred in concluding that "the only testimony [it had] regarding Duncan's intent [when attempting to enter

another inmate's cell] is that he wanted to help the inmate." Appellant's Br. 25–26 (citing R. 62 at PageID 1444). He argues that the district court ignored other evidence of Duncan's intent, including Officer Jones's actions during the incident and Davis's characterization of Duncan's intent. But Jones's actions during the incident are not testimony and do not contradict the district court's conclusion about the testimony before it. Davis's description of the incident, moreover, does not meaningfully contradict Duncan's testimony because Davis was not present at this incident and could not evaluate Duncan's intent. Accordingly, Davis has not shown that the district court improperly resolved factual disputes in Duncan's favor regarding this incident.

Davis also argues that the district court improperly discounted testimony about MCCC's institutional culture because, though Davis failed to cite it, the testimony exists in the record and Defendants cited it.[2] Although testimony about MCCC's culture may exist in the record, Davis was obligated to "set forth specific facts showing that there [was] a genuine issue for trial," which he failed to do. *Franklin v. Franklin County*, 115 F.4th 461, 470 (6th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).

The district court "was not required to comb the record *sua sponte* in search of factual disputes." *Reed v. City of Memphis*, 735 F. App'x 192, 201–02 (6th Cir. 2018) (citing *Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399, 404–05 (6th Cir. 1992)). It acknowledged that Davis's "opposition brief is rife with allegations of a 'toxic culture,'" but explained that "it is essentially void of specific examples or record citations to substantiate these characterizations." R. 62, Summ. J. Op., PageID 1448. In so concluding, the district court did not ignore or discount Davis's evidence; instead, it simply noted that Davis had failed to point to evidence in the record. Davis,

---

[2] Davis also argues that the district court ignored the MCCC culture evidence when it characterized the record as containing only "isolated incidents" of excessive force. But the language Davis quoted does not appear in the district court's opinion.

therefore, has failed to show that the district court improperly weighed the evidence or resolved factual disputes in favor of Defendants regarding the MCCC culture evidence.

**B.     Monell Claims**

Davis asserts that the Institutional Defendants are liable for Duncan's assault pursuant to 42 U.S.C. § 1983.  To establish municipal liability under § 1983, a plaintiff must show that a municipal policy or custom caused the alleged federal violation.  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  We have recognized at least four avenues to do so: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance [of] or acquiescence [in] federal rights violations."  *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  Davis relies on the third and fourth avenues, arguing that the Institutional Defendants failed to properly train Duncan; had a custom of acquiescing to constitutional violations; and negligently hired Duncan.[3]  We address each argument in turn.

1.     The Failure to Train Claim

Davis argues that the district court erred in granting summary judgment to the Institutional Defendants on his failure-to-train *Monell* claim.  To succeed on that claim, a plaintiff must show that "(1) the training [] was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."  *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286–87 (6th Cir. 2020) (quoting *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)).  There are at least two ways to establish the second factor regarding deliberate indifference.  The most

---

[3] Davis also appeared to bring a negligent retention and supervision claim in district court, but he does not challenge the court's dismissal of those claims on appeal.

common way is by showing that the municipality failed to respond "to repeated complaints of constitutional violations by its officers." *Id.* at 287 (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003)). In "a narrow range of circumstances," however, a plaintiff can establish deliberate indifference based on a single incident by showing that the municipality "fail[ed] to equip law enforcement officers with specific tools to handle recurring situations." *Id.* (quoting *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). Given the officers' assigned duties, "the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [defendants] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

It appears that Davis relies on the single incident method as he does not identify repeated constitutional violations resulting from inadequate training. Instead, he asserts that Duncan's training was inadequate because it consisted of a self-taught course with an open-book examination.[4] He contends that MCCC did not offer practical instruction, provide feedback, or review Duncan's completed exam. Davis argues that the "real training" was MCCC's culture, which "trained [Duncan] to escalate."

Despite this, Davis concedes that MCCC's formal training program taught "de-escalation" and "told Duncan not to use excessive force." Duncan testified that he knew from his training that he was not permitted to enter Davis's cell under the existing circumstances. New MCCC corrections officers are required to attend a forty-hour training session within the first few months of employment, which Duncan did. Duncan testified that while at MCCC, he watched instructional

---

[4] Davis also contends that Duncan testified that the answers to the examination were "common knowledge" and that the officers "maybe copied each other." Appellant's Br. 45 (citing R. 51, PageID 882–83, 887). Davis's record cites, however, do not support this assertion; instead, they show only that the officers were given an open-book examination.

videos, attended refresher courses, and shadowed other officers. MCCC also required new officers to attend a month-long, off-site training program about response-to-resistance and de-escalation techniques, but Duncan had already taken the course while at another correctional facility. He also testified that his response-to-resistance training at MCCC was sufficient as a refresher because he already knew the material from his previous course. And although Duncan requested additional training, he did so to become a transport officer and that training did not relate to the use of force. Based on this record, the need for additional training was not "so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the Institutional Defendants were deliberately indifferent to the need. *See Harris*, 489 U.S. at 390.

The record further shows that any purported training inadequacy was not closely related to, or did not actually cause, Davis's injury, the third element of the *Ouza* test. As noted above, Duncan testified that he knew, based on his training, that he was not permitted to enter Davis's cell in these circumstances. Therefore the district court was correct in concluding that any claimed training inadequacy was not the "moving force" behind Duncan's assault. *See Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Brown*, 520 U.S. at 404).

Accordingly, Davis has failed to show a genuine dispute of material fact as to his failure-to-train claim, and we affirm the district court's grant of summary judgment on that *Monell* claim.

2.      Custom of Acquiescing to Constitutional Violations

Under the fourth avenue for establishing municipal liability, Davis argues that the Institutional Defendants had a custom of acquiescing to unconstitutional conduct, which led to Duncan's assault. To establish a *Monell* claim based on a custom of acquiescing to constitutional violations, a plaintiff must show "(1) the existence of a clear and persistent pattern of unconstitutional conduct; (2) notice or constructive notice on the part of the [defendant]; (3) the

[defendant's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the 'moving force' or direct causal link in the constitutional deprivation." *Franklin*, 115 F.4th at 472 (citation modified). The district court granted summary judgment to the Institutional Defendants on this claim, finding that Davis failed to establish a pattern of unconstitutional conduct and that these Defendants were not deliberately indifferent. Davis appeals the district court's conclusion, arguing that he has established each element of this *Monell* claim.

To establish a clear and persistent pattern, "the prior examples of wrongdoing must violate the same constitutional rights [as the plaintiff's] and violate them in the same way," although they need not be identical. *Id.* (citation modified). While we have not specified how many incidents constitute a clear and persistent pattern, we have held that a single incident is insufficient. *Winkler v. Madison County*, 893 F.3d 877, 902 (6th Cir. 2018). On appeal, Davis posits four incidents that he argues show a pattern of unconstitutional conduct: (1) a lieutenant who assaulted a handcuffed inmate in a bathroom; (2) a sergeant who slapped an unconscious inmate; (3) an officer who put hand sanitizer in an officer's drinking water[5]; and (4) an unspecified claim that supervisors routinely entered cells to scream at, physically subdue, and slam inmates against walls.

Davis's argument falters initially because he did not identify the first three incidents to the district court in his summary judgment briefing. The district court noted that Davis's opposition brief was "essentially void of specific examples or record citations" and "[did] not cite or even

---

[5] Although Davis asserts in his briefing that the officer put hand sanitizer in the drinking water of an inmate—not an officer—the record does not support this assertion. The deposition transcript that Davis cites shows that an officer put the hand sanitizer in another officer's drinking water. R. 49, Cox Dep., PageID 772.

describe factually" any other use of force incident apart from the incident at issue in this case. R. 62 at PageID 1448. And though our review is de novo, we review only the arguments presented to the district court and generally do not consider newly presented arguments on appeal. *Reed*, 735 F. App'x at 202.

Even if we were to consider these four claims on appeal, they do not establish a clear and persistent pattern. Two of the incidents do not involve the use of force against inmates. The hand sanitizer incident, for example, did not involve an inmate or the use of force. And the slapping incident involved a sergeant using sternum rubs and face slaps to revive an unconscious inmate who had attempted suicide—unlike Duncan's assault on Davis. The last incident amounts to general allegations regarding the use of force. Davis testified that officers would enter cells and scream at inmates or cuff them and take them to booking. Although the officers would not "punch them or anything like that," they would "definitely make sure they knew they were getting handcuffed, like slam them against the wall or put them on the ground." R. 51, PageID 915. This testimony describes a range of behavior—from entering an inmate's cell to handcuff him and take him to booking to entering a cell to assault an inmate. Davis, however, fails to point to any incident other than his own in which an officer improperly entered an inmate's cell then engaged in an assault.

On appeal, Davis has therefore identified two specific incidents involving the use of force: assault of a handcuffed inmate and Duncan's use of force on Davis. We have found that three discreet incidents arising in one investigation is insufficient to establish a clear and persistent pattern of unconstitutional conduct. *Peet v. City of Detroit*, 502 F.3d 557, 568 (6th Cir. 2007). On this record, where Davis has identified only one use-of-force incident apart from his own assault,

we find that he has not pointed to specific, discrete incidents sufficient to establish a clear and persistent pattern.[6]  We therefore affirm the summary judgment grant to Defendants.

### 3.    Negligent Hiring

Davis also challenges the district court's grant of summary judgment to the Institutional Defendants on his negligent hiring claim.  He asserts that a negligent hiring claim "requires 'actual or constructive notice that a particular applicant may be highly likely to inflict' constitutional injury."  Appellant's Br. 58 (citing *Brown*, 520 U.S. at 411).  But Davis misstates the legal standard for a negligent hiring claim and misquotes *Brown*.  That decision teaches that "culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury.  Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff."  520 U.S. at 412 (emphasis in original).  The "connection between the background of the particular applicant and the specific constitutional violation alleged must be strong."  *Id.*

On appeal, Davis contends that the district court overlooked evidence of an "escalating trajectory," involving "discipline for use of force against a juvenile, followed by termination from

---

[6] Davis cites two cases in support of this Monell claim. Though neither help him, we address them briefly for thoroughness. First, Davis attempts to show a pattern of unconstitutional conduct by pointing to MCCC's culture of violence and institutional failures, which he says this court may consider pursuant to *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005). He asserts that *Thomas* "analyz[es] the 'quality and nature' of the evidence," creating a framework that "evaluates the totality of evidence bearing on institutional practice, not merely the number of documented incidents." Appellant's Br. 36.  But *Thomas* does not contain this quoted language, nor does it stand for this proposition. Instead, *Thomas* looked to the number of similar incidents, holding that the plaintiffs failed to establish a *Monell* claim because they "failed to show several separate instances of the alleged rights violation." 398 F.3d at 434. *Thomas*, therefore, does not support Davis's argument because he too failed to identify multiple use-of-force incidents. Davis also argues that reversal is warranted based on *Poynter v. Bennett*, 162 F.4th 664 (6th Cir. 2025). But the Sixth Circuit has granted en banc rehearing in *Poynter* and vacated the decision. *Poynter v. Bennett*, 169 F.4th 716 (6th Cir. 2026) (order).

another correctional facility, followed by [a] documented cell-entry incident requiring physical intervention, followed by documented habitual threats." Appellant's Br. 58. Two of these incidents, the attempted cell entry and the threats, occurred at MCCC after Duncan was hired, so they have no bearing on Duncan's pre-hire background in a negligent hiring claim. Further, Duncan's termination from another correctional facility for alleged drug smuggling was not due to any use of force and is therefore not related to the injury suffered here. Finally, Davis has provided no argument as to why the single instance of use of force, in a different situation than we have here, is sufficient to provide notice and create a strong connection to Duncan's use of force against Davis. Accordingly, we affirm the district court's grant of summary judgment as to the negligent hiring claim.

### C. Supervisor Liability Claim

Davis contends that the district court erred in granting summary judgment to Osborn on the supervisory liability claim.[7] He argues that, although Osborn did not know about Duncan's assault, Osborn intentionally structured conditions at MCCC so that he would not learn of such unconstitutional conduct. "An official cannot be held liable for the constitutional violations of subordinates under a theory of *respondeat superior*, meaning that [he] 'cannot be held liable simply because . . . [he] was charged with overseeing' subordinate officers who violated the plaintiff's constitutional rights." *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016)). To hold a supervisor liable, a plaintiff must show that the supervisor "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th

---

[7] Davis's briefing on appeal does not address the district court's grant of summary judgment to Osborn on the failure-to-protect Eighth Amendment claim.

Cir. 2020) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).  The supervisor must have engaged in "some active unconstitutional behavior" but it "need not be active in the sense that the supervisor must have physically put his hands on the injured party or even physically been present at the time of the constitutional violation."  *Id.* (citation modified).  A supervisor, for example, may knowingly acquiesce in the subordinate's unconstitutional conduct "through the execution of his job functions, including by failing to take precautions against likely violations." *Id.* (citation modified).

We have indicated that a supervisor is liable for an employee's use of force when the supervisor failed to train and supervise the officer to avoid the use of excessive force, failed to properly investigate the allegations, and attempted to cover-up the unconstitutional conduct.  *Id.* at 865–66.  Here, although Osborn did not directly train Duncan, he delegated the training to his Captain.  After the assault, a prompt investigation occurred, and Duncan was charged and convicted of assault.  On appeal, Davis has not pointed to any other evidence creating a genuine dispute of material fact as to whether Osborn knew or implicitly authorized the assault.

Accordingly, we affirm the district court's grant of summary judgment.

## IV.   CONCLUSION

For the forgoing reasons, we **AFFIRM** the district court's grant of summary judgment.

**JOHN K. BUSH, Circuit Judge, dissenting.** A district court abuses its discretion in certifying a case for immediate appeal when the outcome on the issues pending in the district court could moot the issues on appeal. *Soliday v. Miami County*, 55 F.3d 1158, 1163 (6th Cir. 1995); *Corrosioneering, Inc. v. Thyssen Env't Sys., Inc.*, 807 F.2d 1279, 1284–85 (6th Cir. 1986). That is the case here. The district court's primary rationale for certifying this case for immediate appeal was that Duncan would be unlikely to contest (much less win on) liability for the underlying constitutional violation, but that is far less certain than the district court makes it sound.

A plaintiff cannot win on a *Monell* or supervisory-liability claim without first establishing an underlying constitutional violation. *See, e.g.*, *Martinez v. Wayne County*, 142 F.4th 828, 845 (6th Cir. 2025); *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). True, Duncan pleaded guilty to state charges in state court, but guilty pleas do not carry preclusive effect in Ohio. *State ex rel. Welsh Enters., Inc. v. Indus. Comm'n*, 154 N.E.3d 505, 513–14 (Ohio Ct. App. 2020); *Clark v. Irvin*, 9 Ohio (9 Hammond) 131, 132–33 (1839); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (preclusive effect of state-court judgment is governed by the law of the State in which the judgment was entered). Rather, the plea is, at most, an admission to the facts that took place, which a jury is free to reject. *Welsh Enters.*, 154 N.E.3d at 513–14. That means Duncan's liability for a constitutional violation is still an open question as a formal matter.

It is also an open question as a practical matter. It is far from clear that the facts admitted in the state-court proceedings constitute an Eighth Amendment violation. Ohio's felonious assault statute requires the State to prove that the defendant knowingly caused or attempted to cause physical harm to the victim, a rule that does not require that the defendant make contact the victim. *See State v. Peters*, 231 N.E.3d 37, 46–47 (Ohio Ct. App. 2023). By contrast, a plaintiff alleging

excessive force under the Eighth Amendment must demonstrate that the officer used force "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. So a guilty plea in a garden-variety felonious-assault case might not even be persuasive (much less dispositive) on the question of whether the defendant also used excessive force in violation of the Eighth Amendment.

Thus, a jury could easily side with Duncan at trial. And if the jury finds for Duncan, then Davis's claims against appellees here are absolutely barred, regardless of how we rule in this appeal—i.e., the issues on appeal would be moot. All this means certifying the order on summary judgment for immediate appeal was an abuse of discretion.

The majority does not dispute any of this. Instead, it argues that the district court did not abuse its discretion because (1) the claims pending on appeal are distinct from the claims pending in the district court, and (2) the district court dismissed all of the claims against appellees. Majority at 4–5. But that is not the test. We first ask whether the district court properly entered final judgment as to one claim or party in a case involving multiple parties or multiple claims under Rule 54(b). *Sherrod v. Wal-Mart Stores, Inc.*, 103 F.4th 410, 413–16 (6th Cir. 2024). If we conclude that it has, then we separately ask whether the district court abused its discretion in determining that there is no just reason for delay. *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 275 (6th Cir. 2019). This is a conjunctive test, so both prongs need to be met, and even if the first one is met, that does not mean the second one is automatically met. *See id.*; *see also Corrosioneering*, 807 F.2d at 1283 ("Generally a finding that an issue being considered for Rule 54(b) certification is 'separate and distinct' from remaining issues in a case will begin, rather than end, the district court's certification analysis."). Contrary to what the majority seems

to suggest, the district court's finding that there is no just reason for delay is not enough—we must independently review that finding for an abuse of discretion. *See Corrosioneering*, 807 F.2d at 1285; *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980).

The majority faults me for "adopt[ing] a bright-line rule" instead of the "totality of the circumstances test" that our case law supposedly follows in this area. Majority at 5. But our circuit *has* adopted a bright-line rule that certification under Rule 54(b) an abuse of discretion when the trial could moot the issues on appeal. *See Soliday*, 55 F.3d at 1163 (holding that certification was an abuse of discretion because "the result of [] first trial may obviate the need for this Court to ever address the propriety of the grant of partial summary judgment" despite other factors cutting in favor of certification); *Corrosioneering*, 807 F.2d at 1284 (holding that the potential that further proceedings in the district court "could moot the need for review" of the issues pending on appeal was "alone sufficient to warrant our finding that the district court abused its discretion in rendering the Rule 54(b) certification").

Indeed, the only case that the majority relies on to try and contest this outcome dismissed an appeal that was certified under Rule 54(b) because "the potential for the challenged ruling to be rendered moot . . . constitute[d] just cause to delay appellate review in this case." *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1031 (6th Cir. 1994) (quoted in Majority at 5). The majority may find this outcome unpalatable, but any alleged "convenience" in allowing an immediate appeal "is insufficient to warrant Rule 54(b) certification." *Carpenter v. Liberty Ins. Corp.*, 850 F. App'x 351, 356 (6th Cir. 2021). After all, when it comes to our subject matter jurisdiction, we cannot elevate policy "concerns over jurisdictional rigor." *Wullschleger v. Royal Canin U.S.A., Inc.*, 75 F.4th 918 (8th Cir. 2023) (footnote omitted), *aff'd*, 604 U.S. 22 (2025).

\* \* \*

Under our case law, a district court abuses its discretion in finding that there is no just reason for delay if "the result of the [] trial may obviate the need for this Court to ever address the propriety" of the district court's ruling that is before us on appeal. *Soliday*, 55 F.3d at 1163. Because the majority agrees with me that the trial could moot the issues on appeal, we were obligated under our case law to dismiss the appeal for lack of appellate jurisdiction, even though nobody contested our jurisdiction. *See Gavitt v. Born*, 835 F.3d 623, 638 (6th Cir. 2016) ("Yet, again, although the certification has not been challenged, the court must still satisfy itself that the certification was proper."). Because the majority presses on anyway, I respectfully dissent.